UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL D. CARVER,

    Plaintiff,
v.                                                                                          Hon. Jane M. Beckering

CITY OF KALAMAZOO, et al.,                                                  Case No. 1:22-cv-1024

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael D. Carver filed this action on November 3, 2022, pursuant to 42 U.S.C. § 1983, against the City of Kalamazoo; Kalamazoo County Assistant Prosecuting Attorney (APA) Mike Stein; City of Kalamazoo Police Detective Jennifer Higby; social worker Ruth Westfall; child sexual abuse expert Colleen Gushurst; Child Protective Services employee Ciara Patrick; City of Kalamazoo Police Officer Brian Veltman; Kalamazoo County Deputy Sheriff Unknown Adam; and the Kalamazoo County Sheriff's Department. Plaintiff alleges claims for violation of his rights under the Eighth and Fourteenth Amendments based on his arrest and prosecution for first-degree criminal sexual conduct, Mich. Comp. Laws §§ 750.520b(1)(a) and (2)(b).

Having granted Plaintiff's motion to proceed as a pauper, I have conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Based on this review, I conclude that Plaintiff's Section 1983 claims must be dismissed because they fail to state a claim upon which relief may be granted and seek monetary relief against a defendant immune from such relief.

## I. Background

On or about March 1, 2014, the City of Kalamazoo Police Department received a report that Plaintiff's niece's five-year-old daughter reported that Plaintiff had inappropriately touched her. (ECF No. 1 at PageID.2–3.) *See People v. Carver*, No. 328157, 2017 WL 3721988, at *1, 10 (Mich. Ct. App. Aug. 29, 2017). Defendants Higby and Veltman investigated the matter. On March 1, 2014, Officer Veltman contacted the victim and her family and prepared a report, which he gave to Detective Higby. On March 14, 2014, Detective Higby interviewed Plaintiff. (*Id.* at PageID.3.) Thereafter, Detective Higbee submitted a warrant request to APA Stein for Plaintiff's arrest. On March 28, 2014, APA Stein charged Plaintiff with criminal sexual conduct (CSC) first-degree involving a child under age 13, and a warrant was issued for his arrest. Plaintiff alleges that Higby obtained the warrant by "falsely swearing under oath" that "'in her experience' . . . Plaintiff engage[d] in criminal sexual conduct with the victim." (*Id.*)

Detective Higby arrested Plaintiff on March 28, 2014, and lodged him in the Kalamazoo County Jail. While Plaintiff was detained in the jail, Defendant Patrick met with Plaintiff. She later contacted Higby and indicated her belief that Plaintiff had committed a crime. On April 7, 2014, the district court held a preliminary examination, at which the prosecution used "false testimonies and coerce[d] statements by both witnesses." (*Id.* at PageID.4.) At the conclusion of the hearing, Plaintiff was bound over to the circuit court for trial. On June 20, 2015, following a jury trial, Plaintiff was convicted of the criminal sexual conduct charge. He was later sentenced to 25 to 50 years imprisonment with the Michigan Department of Corrections (MDOC). (*Id.*)

Plaintiff appealed his conviction to the Michigan Court of Appeals and moved to remand the case for an evidentiary hearing on his claim that his counsel was ineffective for failing to consult with and call an expert on child suggestibility. The court granted the motion. On remand,

the trial court held an evidentiary hearing. Following the hearing, the trial court granted Plaintiff's motion for a new trial on the ground of ineffective assistance of counsel. On appeal, the court of appeals affirmed the trial court's order and vacated Plaintiff's conviction and sentence. *Carver*, 2017 WL 3721988, at *1. The Michigan Supreme Court denied leave to appeal. *People v. Carver*, 501 Mich. 1092 (2018). One justice dissented from the denial and would have reversed the judgment of the court of appeals and reinstated the conviction and sentence. *Id.*

Plaintiff was released from custody on August 12, 2018. (ECF No. 1 at PageID.4–6.) On November 7, 2020, the CSC charge was dismissed. (*Id.* at PageID.4.)

Plaintiff alleges seven claims. In Counts I and II, he alleges that Detective Higby and Officer Veltman violated the Fourth Amendment by obtaining an arrest warrant not supported by probable cause and using it to effect his arrest. In Count III, Plaintiff alleges a claim of malicious prosecution under the Fourth Amendment against Detective Higby and APA Stein. In Counts IV and V, Plaintiff alleges Fourth and Fourteenth Amendment claims of detention without due process. In Count V, Plaintiff alleges a claim of supervisory liability against Detective Higby for failure to train or supervise. Finally, Count VII alleges a claim of detention without due process under the Fourteenth Amendment, although the substance of the claim is more properly characterized as a supervisory liability claim against APA Stein.

## II. Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

3

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

### III.  Discussion

#### A.  Prosecutorial Immunity – APA Stein

As noted, Plaintiff alleges several claims against APA Stein, who charged Plaintiff and handled the prosecution of the criminal case. APA Stein is entitled to absolute immunity from Plaintiff's individual capacity claims against him based on his conduct while prosecuting the criminal action against Plaintiff.

The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*,

4

500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Acts which occur in the course of the prosecutor's role as advocate are entitled to the protection afforded by absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276–78 (1993); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797.

Here, with the possible exception of the failure to train and supervise claim against APA Stein set forth in Count VII, all of Plaintiff's allegations concerning APA Stein involve the initiation and prosecution of the criminal action against Plaintiff. These are actions intimately associated with the judicial phase of the criminal process, for which APA Stein is entitled to absolute immunity.[1] Accordingly, such claims against APA Stein should be dismissed.

### B. Lack of Factual Allegations/Conclusory Allegations

Plaintiff includes Kalamazoo County Deputy Sheriff Unknown Adam and the Kalamazoo County Sheriff's Department in the body of the complaint, but he did not include them in the caption. Plaintiff also does not include any factual allegation to explain what these Defendants did

---

[1] To the extent Plaintiff sues APA Stein for his role in obtaining the arrest warrant, APA Stein also enjoys absolute prosecutorial immunity for performing that function. *Rouse v. Nessel*, No. 21-1630, 2022 WL 13631916, at *3 (6th Cir. July 11, 2022).

to violate his rights. In addition, although Plaintiff names Ruth Westfall and Collette Gushurst as Defendants, his complaint is devoid of any factual allegations as to how they violated his constitutional rights. Where an individual is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). A claimed constitutional violation must be based upon active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Although Plaintiff mentions Defendants Gushurst and Westfall in Count VII, he fails to identify what they allegedly did to violate his rights.[2] Thus, Plaintiff's assertions are insufficient to allege a plausible constitutional claim against these Defendants.

Apart from insufficient factual allegations, I would add that Plaintiff's claim against the Kalamazoo County Sheriff's Department must be dismissed because it is not an entity that is capable of being sued. *Duffin v. Washtenaw Sheriff Dep't*, No. 08-CV-10419, 2008 WL 2415864, at *2 (E.D. Mich. June 12, 2008) (citing *Hughson v. County of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988) (noting that the sheriff is a constitutional officer and an individual, but the

---

[2] Gushurst and Westfall testified for the prosecution at the trial. *See Carver*, 2017 WL 3721988, at *1, 12. To the extent Plaintiff sues Gushurst and Westfall based on their testimony during the criminal trial, his claims are barred by absolute witness immunity. *See Spurlock v. Satterfield,* 167 F.3d 995, 1001 (6th Cir. 1999) ("It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings."); *accord Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2002).

sheriff's department is not a constitutional office and cannot be sued)); *see also Bernard v. Brinkman*, No. 1:07-cv-459, 2007 WL 2302354, at *3 (W.D. Mich. Aug. 8, 2007) (Kent County Correctional Facility, Kent County Sheriff's Department, and Kent County Prosecutor's Office are not legal entities capable of being sued).

Finally, with the exception of Count VII, in which he merely mentions her, Plaintiff does not cite any conduct by Defendant Patrick that could arguably amount to a constitutional violation. Plaintiff's allegation that Defendant Patrick met with him while he was in the jail and subsequently expressed her "belief" to Detective Higby that Plaintiff committed the crime does not amount to unconstitutional conduct.

  **C.**  **Supervisory Liability/*Monell* Claim**

Count VI alleges a claim of supervisory liability/failure to train. The Defendant(s) at whom this claim is directed is unclear. Plaintiff mentions "Defendant Detective unit," "Defendant Higby as the duly elected Kalamazoo Police Department and detective Board Member," and "[t]he supervisory Defendant." Plaintiff also alleges that "[t]he supervisory Defendant has been deliberately indifferent to the need to adequately train Defendant Higby." (ECF No. 1 at PageID.9.) Count VII purports to be a due process claim but alleges that APA Stein failed to adequately train and/or supervise Defendants Patrick, Gushurst, and Westfall regarding the Fourth and Fourteenth Amendments. (*Id.* at PageID.10.)

First, to the extent Plaintiff intends to allege a supervisory liability claim against Defendant Higby in her individual capacity in Count VI, the claim fails because Plaintiff does not identify who Higby allegedly supervised and what such person did to violate Plaintiff's constitutional rights. Moreover, any individual capacity claim alleged in Counts VI and VII fails because Plaintiff does not allege active unconstitutional conduct. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or

7

vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575-76; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899. Supervisory liability attaches only if the plaintiff shows that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [defendant]." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal quotation marks omitted). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In short, Plaintiff does not allege that Detective Higby authorized, approved, or knowingly acquiesced in the unconstitutional conduct of a subordinate, or that Higby's supervisor engaged in such conduct. The same is true as to the claim against APA Stein in Count VII.

Plaintiff's claims are also subject to dismissal to the extent that they purport to be official capacity *Monell* claims against Defendant City of Kalamazoo, because they allege no facts supporting a plausible *Monell* claim. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 388–89 (6th Cir. 2017) (confirming that the Supreme Court's decisions in *Twombly* and *Iqbal* apply to *Monell* claims); *Rayfield v. City of Grand Rapids*, 373 F. Supp. 3d 962, 977 (W.D. Mich. 2018) ("Conclusory assertions [of a policy or custom] are not enough to state a *Twombly* plausible *Monell* claim."). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish this type of claim, a plaintiff must show that: "1) the [municipality's] training program was inadequate for the tasks that [its employees] must perform; 2) the inadequacy was the result of the

[municipality's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)). The first element focuses on the adequacy of the municipality's training program. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Here, Plaintiff presents no factual allegations (as opposed to legal conclusions), setting forth why the training program was inadequate for the required tasks. Plaintiff merely alleges that the training and supervision of Higby and/or other employees was improper, without further elaboration. Similarly, Plaintiff fails to include factual allegations showing that the City was deliberately indifferent to the inadequacy of its training program. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference[.]" *Connick*, 563 U.S. at 62 (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). The complaint is silent on this aspect of the claim. Plaintiff fails to allege even a single prior incident, let alone a pattern of similar incidents, that would have alerted the City to the fact that its training program was inadequate.

Plaintiff's allegations are similarly deficient with regard to his failure-to-supervise claim. To impose municipal liability under this theory, a plaintiff must show that: (1) the defendant government was aware, or on notice, that its employees committed or were likely to commit constitutional violations; (2) it chose not to take corrective action with deliberate indifference to the consequences for individuals' constitutional rights; and (3) the lack of corrective action actually caused the alleged constitutional violation. *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010). Rather than alleging facts that could plausibly sustain such a claim, Plaintiff simply alleges conclusions that fail under *Twombly* and *Iqbal*. As is true for his failure-to-train claim, Plaintiff provides no factual content to suggest that the City was deliberately indifferent to his or

other citizens' rights. *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996). Finally, any official capacity claim against APA Stein in Count VII is barred by Eleventh Amendment immunity, which applies to state employees, such as prosecutors, judges, court clerks, and state agency employees who are sued in their official capacities. *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 764 (6th Cir. 2010).

### D.    Fourth/Fourteenth Amendment Arrest, Detention, and Prosecution

In Counts I and II, against Detective Higby and Officer Veltman, respectively, Plaintiff alleges that the arrest warrant was issued without probable cause, and specifically asserts in Count I that Higby omitted material information from, and made false statements in, the warrant application, which vitiated probable cause. (ECF No. 1 at PageID.5–6.) In Counts IV and V, Plaintiff alleges that Detective Higby detained him without due process from the date of the arrest through his release from the MDOC on August 12, 2018, in violation of the Fourth and Fourteenth Amendments. These claims are subject to dismissal for a number of reasons. First, Plaintiff's allegations of "omitted material information" and inclusion of false statements in the warrant application, lack of probable cause, and Higby's possession of "exculpatory evidence" are nothing more than legal conclusions without any supporting factual content required to state a plausible claim under *Twombly* and *Iqbal*. Second, as for the Fourth Amendment claim against Officer Veltman, Plaintiff's only factual allegations are that Officer Veltman contacted/interviewed the victim and her family and provided a report—that he does not allege contained false or misleading statements—to Detective Higby. (*Id.* at PageID.3.) Plaintiff says that Higby, not Veltman, submitted the warrant request and arrested Plaintiff pursuant to the warrant. (*Id.* at 3–4.) This conduct does not allege a constitutional violation. Plaintiff also fails to allege how he was deprived of due process. The Due Process Clause of the Fourteenth Amendment "provide[s] a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." *Collins*

*v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Moreover, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of . . . due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Plaintiff's allegations indicate that he received all the process he was due, including a preliminary examination, a trial, post-trial appeals, and a hearing that resulted in vacation of the conviction and sentence and a new trial. Therefore, Plaintiff's due process claims are, in essence, Fourth Amendment claims.

Apart from the forgoing reasons for dismissing Counts I, II, IV, and V, these claims are barred by the statute of limitations. Although the statute of limitations is an affirmative defense, if the allegations in a complaint show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim upon which relief may be granted. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones* and holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim).

State statutes of limitations and tolling principles apply to determine the timeliness of claims raised in lawsuits brought pursuant to Section 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). Section 1983 civil rights actions are governed by the state statute of limitations for personal injury actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). For such actions in Michigan, the statute of limitations is three years. Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). Accrual of the claims for relief is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th

Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis for the action. *Collyer*, 98 F.3d at 220.

In *Wallace*, *supra*, the Supreme Court addressed the question of when the limitations period begins to run under Section 1983 for claims based on a lack of probable cause, such as false arrest and false imprisonment. The Court said that when the claim is one of wrongful arrest, the limitations period "would normally commence to run" from the date of arrest. 549 U.S. at 388. In contrast, because false imprisonment concerns "detention *without legal process*," the limitations period for a false imprisonment claim commences once the plaintiff is detained pursuant to lawful process. *Id.* at 389 (italics in original). As the Court explained,

> a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges. . . . If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.

*Id.* at 389–90 (italics in original) (citations and quotation marks omitted).

*Wallace* involved an arrest without a warrant. *Id.* at 389. In contrast, here, Plaintiff was arrested pursuant to a duly obtained arrest warrant issued upon probable cause. In this situation, the statute of limitations commences upon arrest. *See Wheeler v. Kirkland*, No. 07-CV-336, 2008 WL 440287, at *6 (E.D. Ky. Feb. 13, 2008) (noting that in contrast to *Wallace*, where arrest is pursuant to a duly obtained arrest warrant, the statute of limitations commences upon arrest). Here, the limitations period commenced on March 28, 2014, at the time of Plaintiff's arrest. But even if the limitations period commenced at the time of the preliminary examination on April 7, 2014, *i.e.*, when Plaintiff admits he received legal process, Plaintiff still filed his complaint well beyond the three-year period.

Michigan law no longer tolls the running of the statute of limitations while a plaintiff is incarcerated. Mich. Comp. Laws § 600.5851(9). Thus, any period of time Plaintiff might have spent in jail or prison due to the arrest does not toll the limitations period. In addition, it is well-established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. General Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *see also Mason v. Dep't of Just.*, No. 01-5701, 2002 WL 1334756, *2 (6th Cir. June 17, 2002). Therefore, Counts I, II, IV, and V are time-barred.

Plaintiff does allege a Fourth Amendment malicious prosecution claim in Count III, which is timely because the CSC charge was not dismissed until November 7, 2020. *See Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir. 2018) (limitations period for malicious prosecution claim commenced when the criminal proceeding ended after the trial court dismissed the charges, not earlier when the state court of appeals vacated the plaintiff's conviction and remanded to the trial court for further proceedings). Courts continue to recognize a Fourth Amendment malicious prosecution claim but also question whether it is even viable under the Fourth Amendment. For present purposes, the elements of malicious prosecution are: "(1) the defendant made, influenced, or participated in the decision to prosecute; (2) the government lacked probable cause; (3) the proceeding caused the plaintiff to suffer a deprivation of liberty; and (4) the prosecution ended in the plaintiff's favor." *Lester v. Roberts*, 986 F.3d 599, 607 (6th Cir. 2021) (internal quotation marks omitted). As with his other Fourth Amendment claims, his malicious prosecution claim is subject to dismissal because his lack of probable cause allegations are conclusory in nature. That is, Plaintiff offers nothing more than labels and conclusions—"without probable cause," "false testimonies and coerce[d] statements," (ECF No. 1 at PageID.4, 7)—without the necessary factual content to state a claim. *See Briggs v. Hogan*, No. 21-5581, 2022 WL 985825, at *5-6 (6th Cir.

Apr. 1, 2022) (affirming dismissal of malicious prosecution claim because the plaintiff's allegations that his arrest and prosecution were induced by fraud, perjury, and fabricated evidence were "simply legal conclusions . . . unsupported by any facts in the complaint"); *Rapp v. Putman*, 644 F. App'x 621, 627–28 (6th Cir. 2016) (affirming dismissal of the plaintiff's malicious prosecution claim because his "bare assertions that he was prosecuted based on 'false information' and 'without probable cause' are legal conclusions, not specific factual allegations necessary to survive a motion to dismiss"); *Jenkins v. Bay City*, No. 1:18-cv-11976, 2018 WL 6566573, at *3 (E.D. Mich. July 10, 2018), *report and recommendation adopted*, 2018 WL 5800918 (E.D. Mich. Nov. 6, 2018) (dismissal of malicious prosecution claim appropriate because "Plaintiff insufficiently details the lack of probable cause behind these numerous proceedings").

Accordingly, I recommend that the Court dismiss Count III for failure to state a claim.

### IV. Conclusion

For the foregoing reasons, I recommend that the Court dismiss Plaintiff's action for failure to state a claim and because Plaintiff seeks monetary relief against a defendant immune from such relief.

The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and recommend that, should Plaintiff appeal this decision, the Court assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

Date:  November 16, 2022            /s/ Sally J. Berens
                                                         SALLY J. BERENS
                                                         U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).